CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

OCT 05 2006

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RACRESHA POWERS** | ) | **MEMORANDUM OPINION** |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 2:05cv00070 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | By: GLEN M. WILLIAMS |
| Defendant. | ) | Senior United States District Judge |

Racresha Powers, brought this action against defendant, Wal-Mart Stores, Inc., ("Wal-Mart"). Powers alleges that Wal-Mart had a duty under Virginia law to keep its Norton, Virginia, store in reasonably safe condition and that Wal-Mart failed to satisfy this duty. As a result of this alleged breach of duty, Wal-Mart allegedly caused Powers to sustain injuries for which she now seeks to recover monetary damages in the sum of $200,000.00. Powers is a resident of the Commonwealth of Virginia. Wal-Mart is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas. Based on the diversity of these parties, Wal-Mart removed this matter to federal court pursuant to 28 U.S.C. § 1446. This court has diversity jurisdiction to decide this matter under 28 U.S.C. §§ 1332 and 1441.

Case 2:05-cv-00070-GMW-PMS   Document 29   Filed 10/05/06   Page 1 of 13   Pageid#: 287

## I. Procedural History

This matter is currently before the court on the defendant's motion for summary judgment, (Docket Item No. 13), ("Summary Judgment Motion"), and the defendant's memorandum in support of the Summary Judgment Motion, (Docket Item No. 14), ("Defendant's Brief"). In response to the Summary Judgment Motion, Powers made a motion to continue the trial and a motion for an extension of time to file a response to the Summary Judgment Motion due to problems in the discovery process, (Docket Item No. 16), (correcting Docket Item No. 15). United States Magistrate Judge Pamela Meade Sargent granted the motion for an extension of time to file a response until July 13, 2006, and took under advisement the motion to continue, (Docket Item No. 17).[1]

In the meantime, Wal-Mart responded in support of the plaintiff's motion to continue and motion for extension of time to file a response, (Docket Item No. 18). Thus, on July 13, 2006, the motion to continue was granted by Judge Sargent, (Docket Item No. 20). Powers responded to the Summary Judgment Motion on July 20, 2006, (Docket Item No. 22), ("Response"). On July 25, 2006, Powers made a motion under Federal Rule of Civil Procedure 56(f) to hold ruling on the Summary Judgment Motion in abeyance pending completion of discovery, (Docket Item No. 25), ("Abeyance Motion"). The Summary Judgment Motion and the Abeyance Motion are now before Judge Williams.

---

[1] Judge Sargent was authorized to handle all discovery disputes by scheduling order of the Honorable Glen M. Williams, Senior United States District Judge, (Docket Item No. 9).

## II. Facts

The facts presented in the record of this case will be viewed in the light most favorable to the nonmoving party. Powers was deposed in this case, and her deposition has been submitted to the court. In her deposition, Powers swore to the following account of the facts. On or about July 12, 2004, Powers was shopping with her mother at the Wal-Mart store located in Norton, Virginia.[2] Powers and her mother were proceeding to the cash registers to check out, and Powers decided to get a beverage. While walking down the aisle at Wal-Mart, referred to as "Action Alley,"[3] Powers slipped and fell twice. Powers was on her way to the drink cooler when she slipped on a clear liquid on the floor of the Wal-Mart store.

Powers stated that her first fall was in the middle of "Action Alley," about four to six feet from the drink cooler. This first fall was caused by her right foot slipping on something on the Wal-Mart floor. The slip caused her to fall on her right knee. Powers then got up and proceeded approximately 10 steps to the drink cooler and got a drink. The second fall occurred less than a minute later after Powers had gotten her drink and was proceeding back to the cash register. She slipped again, causing her to land on her right knee and hands. Powers did not see anything on the floor until after the second fall. At which point she noticed small drops of a clear liquid. As a result of her falls, Powers claims that she sustained injuries to her right knee, right

---

[2] The Wal-Mart store located in Norton, Virginia, where this injury occurred has ceased operations and was replaced by a nearby Wal-Mart Supercenter Store near Wise, Virginia.

[3] "Action Alley" is Wal-Mart's terminology for the aisle area of the store located in front of the cash registers.

-3-

femur and left hand.

In her deposition, Powers stated that a Wal-Mart employee, Tonk, was standing about four feet from where she fell. Powers believes that, at the time of her fall, Tonk was employed as a stockman at Wal-Mart. Powers also stated that Tonk was talking to someone at the time of her fall. In addition, Powers' deposition indicates that Tonk had his back to her when she fell. When she fell, Tonk "looked back" and Powers stated that she had fallen. (Powers Deposition at 21.) After Powers made this statement, a Wal-Mart cashier named Cassalee Hensley came over and began wiping the floor around the area of the first fall.

As Hensley was cleaning up the first spot, Powers walked nearby trying to avoid the area where she had just fallen and she fell the second time. Powers then informed Hensley that there was something on the floor where she had fallen the second time. Powers estimated the distance between the two falls to be about six feet. She also testified that she did not see the substance on the floor prior to either fall and that she could not see the liquid until after her second fall.

Powers indicated that the liquid on the floor was in the form of small puddles that were scattered around and each appeared to be about the size of a quarter. She testified that following her second fall she looked around and saw three or four of these small puddles. She did not notice the puddles until she was standing directly over them after her second fall, searching for the cause of her fall. Furthermore, Jimmy Peters, the Wal-Mart Assistant Manager who investigated Powers's falls and filled out the accident report, stated in his deposition that the small puddles were

difficult to see. Peters was unable to see the small puddles until he was directed to the location by Powers and was right on top of them.

In addition, Powers stated that she did not know how the liquid got on the floor or how long it had been there. She also stated that she had no evidence that any representative or employee of Wal-Mart knew the liquid was on the floor before she slipped. The depositions of Jimmy Peters and Cassalee Hensley, the Wal-Mart cashier, also indicate that none of the Wal-Mart employees knew of any liquid on the floor before Powers fell. Peters asked the people who were around the accident scene and nobody saw the water. In his investigation, Peters was unable to determine any source for the water. Peters also stated that after it was cleaned up, water never returned to that location.

*III. Analysis of the Summary Judgment Motion*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable

to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir. 1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all her evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 248.

Since the court's jurisdiction in this case rests on diversity, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *See, e.g., Ferens v. John Deer Co.*, 494 U.S. 516, 519, 531 (1990); *Merlo v. United Way of America*, 43 F.3d 96, 102 (4th Cir. 1994); *Nguyen*, 44 F.3d at 237. This court sits in Virginia, and Virginia is a traditional *lex loci* choice of law state, meaning the substantive law of the place of the wrong governs the proceeding. *See Frye v. Commonwealth*, 231 Va. 370, 376 (1986). The injury alleged by Powers occurred in Virginia. Therefore, Wal-Mart's premises liability is governed by Virginia law.

Virginia law on premises liability in slip-and-fall cases is well-settled. The Supreme Court of Virginia has held that a customer is an invitee of a store owner.

-6-

Case 2:05-cv-00070-GMW-PMS   Document 29   Filed 10/05/06   Page 6 of 13   Pageid#: 292

*See Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990). A store owner owes an invitee a duty of ordinary care and must keep the premises in a reasonably safe condition. *See Winn-Dixie*, 240 Va. at 182, 396 S.E.2d at 650. This duty requires the store owner:

> to remove, within reasonable time, foreign objects from its floors which may have been placed there or which it knew or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but as or should have been known to the [store owner].

*Winn-Dixie Stores*, 240 Va. at 182, 396 S.E.2d at 650 (quoting *Colonial Stores v. Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962)).

In Virginia, the plaintiff has the burden of proof to demonstrate that a store had actual or constructive knowledge of a hazard on its floors and failed to remove that hazard. *See Winn-Dixie*, 240 Va. at 184, 396 S.E.2d 651.

Constructive knowledge can be proved if a reasonable person in the same circumstances either knew, should have known or could have foreseen the danger. *See Winn-Dixie*, 240 Va. at 183, 396 S.E.2d 650. If there is constructive knowledge of a danger, a store owner may be liable if they do not correct the problem within a reasonable time or warn of the presence of the hazard. *See Ashby v. Faison & Associates, Inc.*, 247 Va. 166, 170, 440 S.E.2d 603 (1994). However, constructive knowledge cannot be inferred from the condition of an item on the floor. Appearance of an item cannot be used to infer that it had been on the floor long enough that the store should have known of its presence. Additionally, the presence

-7-

of employees working near a substance on the floor cannot be used to impute constructive knowledge to a store. *See Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167, 169-70 (4th Cir. 1966).

In any personal injury case in Virginia, the plaintiff has the burden to prove that her injury was the result of the defendant's negligence. *See Murphy v. J.L. Saunders, Inc.*, 202 Va. 913, 917, 121 S.E.2d 375, 379 (1961). The plaintiff must "show why and how the accident happened." *Murphy*, 202 Va. at 917, 121 S.E.2d at 379. Inferences are not sufficient to establish liability, and if the determination is left to conjecture, the plaintiff cannot recover. *See Murphy*, 202 Va. at 917, 121 S.E.2d at 379.

Furthermore, in Virginia, a plaintiff's case can never rise above the plaintiff's own statements, and the plaintiff's statements are binding upon her case. *See Massie v. Firmstone*, 134 Va. 450, 461-62, 114 S.E. 652, 655-66 (1922). Therefore, Powers' statements in her deposition are binding and if they establish that there is no material issue of fact in this case, then summary judgment is appropriate.

Powers's deposition and the facts of this case provide absolutely no proof of any actual knowledge on the part of Wal-Mart as to the drops of clear liquid on the floor. This leaves the question of whether there was any constructive knowledge of the drops of clear liquid by Wal-Mart. To survive this motion for summary judgment, Powers must have provided evidence sufficient to establish that a material issue of fact exists such that through the exercise of ordinary care and diligence Wal-Mart should have known of the presence of small puddles of clear liquid on the floor of

-8-

"Action Alley."

From the depositions of Powers and Peters it is abundantly clear that no Wal-Mart employees knew of the liquid on the floor prior to either fall. After the first fall, a Wal-Mart employee, Hensley, promptly responded to the situation and began to clean up the area of the first fall even before either Powers or Hensley knew that there was some substance on the floor.[4] Moments later, Powers fell again at a nearby location. It was not until after the second fall that Powers was able to determine that there was actually something on the floor. She also specifically stated that she had no knowledge that anyone from Wal-Mart knew or should have known of the hazard. Even then, she was never able to establish that the water on the floor actually caused her fall. Neither Powers nor Peters, who examined the scene of the accident more closely, were able to find any evidence of smeared drops or footprints.

Powers's own statements demonstrate that the small quarter-sized puddles of clear liquid were very difficult to see. She stated that she did not see them prior to either fall. After her first fall, she walked several feet away because she did not want to slip again, she was walking with extra care and a heightened awareness, yet she still was unable to see anything on the floor prior to her second fall. It was not until after falling twice and standing over the location, specifically looking for the cause of her fall, did she spot the small drops of clear liquid.

---

[4] Viewing the facts in the light most favorable to Powers requires that the court accept her statement that Hensley began to clean up liquid on the floor after her first fall. This is disputed by Hensley's deposition. However, this is not an issue of material fact that would impact whether or not Wal-Mart had notice of the hazard. Whether Hensley was cleaning up the location of the first fall at the time Powers fell a second time at a second location does not, in any way, indicate that Wal-Mart had notice of the these hazards prior to either fall.

-9-

Case 2:05-cv-00070-GMW-PMS Document 29 Filed 10/05/06 Page 9 of 13 Pageid#: 295

The mere presence of Tonk and Hensley nearby does not establish constructive knowledge. Powers's own statements indicate that Tonk was talking with a person and his back was to the location where she fell. However, even if Tonk had been standing there staring at the location where Powers fell, her own testimony indicates that it would have been unlikely that Tonk would have been able to see the hazard either. Furthermore, no evidence has been presented to indicate why Tonk should have known there was liquid on the floor.

With respect to Hensley, Powers's deposition indicates that Hensley did not know there was liquid on the floor. Powers stated that Hensley came to the scene after Powers told her that she fell. Then, after Powers fell the second time, she told Hensley that there was liquid on the floor near the location of her second fall. There is nothing even suggested to indicate that Hensley should have known that there was liquid on the floor in these two different spots prior to either fall.

The liquid on the floor was clear, it was in small droplets and it was difficult to see. It was so difficult to notice that Powers, who had just slipped and fell moments before and was trying to avoid falling again, was unable to notice the small spots of clear liquid before falling a second time. Peters's deposition indicated that he could not see the liquid until he was directed to the location by Powers and he was "up on it." (Peters Deposition at 33.) Furthermore, Peters's deposition indicated that the store is frequently checked for any sort of dangerous things on the floor and the employees are told, on a daily basis, to be on the lookout for any such hazards.

Wal-Mart has a duty of ordinary care, not extraordinary care. It is not required

to sense any possible unexplained, and virtually invisible hazard. Based on the facts alleged in Powers's own deposition, there is no way under Virginia law that Wal-Mart can be deemed to have been on constructive notice of the three or four small drops of clear liquid on their floor. There is also no evidence available, not even speculative evidence, as to how long the liquid was on the floor or how it got there. To recover under Virginia law, Powers must show "why and how the accident happened." *Murphy*, 202 Va. at 917, 121 S.E. at 378. Powers has failed to meet this standard.

By substituting the names of the parties in this case into the text of prior Supreme Court of Virginia decisions finding the lack of constructive knowledge, it is evident that Powers has not made out a case of negligence.

> There is no evidence in this case that [Wal-Mart] knew of the presence of the [water] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed upon the floor an instant before [Powers slipped on] it as it is to infer that it had been there long enough that [Wal-Mart] should, in the exercise of reasonable care, have known about it.

*Winn-Dixie*, 240 Va. at 184, 396 S.E.2d at 651(quoting *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 537-38, 125 S.E.2d 188, 190 (1962)).

Any finding that Wal-Mart was on constructive notice of the liquid on the floor in this case would be based purely upon conjecture. This type of speculative determination is prohibited by Virginia law. *See Colonial Stores*, 203 Va. at 538, 125 S.E. at 190. As a result, there is no genuine issue of material fact upon which a

-11-

verdict in favor of Powers could be justified. Under Virginia law, a plaintiff's case cannot rise above their own testimony. *See Massie*, 134 Va. At 461-62, 114 S.E. at 655-66. In this case, the factual statements provided by Powers in her deposition establish that there was no actual knowledge or constructive knowledge of the liquid hazard on the Wal-Mart floor. Therefore, Wal-Mart's motion for summary judgment will be granted.

### *IV. Analysis of Rule 56(f) Motion*

Powers also has asserted the Abeyance Motion under Federal Rule of Civil Procedure 56(f) asking the court to hold in abeyance any ruling on the Summary Judgment Motion until discovery has been completed by both parties. *See* Docket Item No. 25. Under Virginia law, a party cannot rise higher than her own testimony based on the Supreme Court of Virginia's holding in *Massie*, 134 Va. at 461-62, 114 S.E. at 655-66. Powers's own testimony destroys her case because it makes it clear that Wal-Mart had no actual or constructive notice. Furthermore, her statements indicate that any notice would have been practically impossible before the accident due to the nature of the hazard. Based on *Massie*, no amount of additional discovery is going to change these facts.

In addition, the Abeyance Motion does not satisfy requirements for a motion under Rule 56(f). Rule 56(f) allows the court to postpone any ruling on a motion properly before the court so that an affidavit, deposition or other discovery can be completed prior to the court's decision. However, this motion may be made, and relief may be granted, only based on an affidavit of the party opposing the motion.

-12-

Fed. R. Civ. P. 56(f). The Fourth Circuit also has held that asserting in a brief that discovery has been inadequate or that additional discovery is needed does not form the basis of a Rule 56(f) motion. *See Nguyen*, 44 F.3d at 242. Making vague assertions about additional areas of discovery is not enough to establish grounds for a Rule 56(f) continuance. *See Nguyen*, 44 F.3d at 242. Instead the party opposing summary judgment must present an affidavit to the court that specifies, with particularity, legitimate needs for further discovery. *See Nguyen*, 44 F.3d at 242.

In this case, Powers has not made any attempt to file an affidavit as required by Rule 56(f). There was no effort made to establish any grounds upon which to base a Rule 56(f) motion and there was certainly no affidavit filed with this court. Therefore, the Rule 56(f) motion is improper and, thus, the motion is denied.

### *V. Conclusion*

The court will deny Powers's Abeyance Motion and will grant Wal-Mart's motion for summary judgment. An appropriate Order will be so entered.

**DATED:** This 5th day of October, 2006.

_____
**GLEN M. WILLIAMS**
**SENIOR UNITED STATES DISTRICT JUDGE**